1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TSUNG H HSU,

                Plaintiff,

    v.

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

                Defendant.

No. 2:20-cv-00088-TSZ

**NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY'S
MOTION FOR SUMMARY
JUDGMENT**

NOTE ON MOTION CALENDAR:
February 12, 2021

**ORAL ARGUMENT REQUESTED**

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.     INTRODUCTION AND RELIEF REQUESTED ...............................................1

II.    STATEMENT OF FACTS ....................................................................2

    A.    Dr. Hsu's Disability Policy Governs This Case.................................2

    B.    Dr. Hsu's Work at the Center for Pain Control and Wyomissing Surgical
        Services. ...................................................................................3

    C.    Dr. Hsu's Stint with The Iowa Clinic. ...........................................4

    D.    Dr. Hsu's Claimed Disability........................................................4

    E.    Dr. Hsu's Untimely Claim for Disability Benefits. ..............................5

III.   ISSUES PRESENTED.........................................................................6

IV.    EVIDENCE RELIED UPON .................................................................6

V.     AUTHORITY AND ARGUMENT ...........................................................6

    A.    Summary Judgment Standard. .......................................................7

    B.    Plaintiff Failed to Provide Timely Notice and Proof to Northwestern
        Mutual, as Required By His Insurance Contracts. ...............................7

        1.    Northwestern Mutual is Entitled to Summary Judgment on
            Plaintiffs' Untimely Benefits Claim. ....................................8

        2.    Northwestern Mutual Is Entitled at Minimum to Summary
            Judgment on Plaintiff's Benefits Claims Prior to March 2018..................10

    C.    Dr. Hsu's Breach of Contract Claim Fails. ......................................11

        1.    Dr. Hsu's Breach of Contract Claim Fails Because He Is Not
            Disabled. .....................................................................11

        2.    Dr. Hsu's Breach of Contract Claim Fails Because He Is Not
            Partially Disabled.............................................................13

    D.    Dr. Hsu's Bad Faith and IFCA Claims Also Fail as a Matter of Law. ..................14

        1.    Dr. Hsu's Bad Faith Claim Fails as a Matter of Law Because
            Northwestern Mutual Acted Reasonably Under the Circumstances..........14

        2.    Dr. Hsu's IFCA Claim Fails as a Matter of Law Because
            Northwestern Mutual Acted Reasonably Under the Circumstances..........16

VI.    CONCLUSION.................................................................................17

NORTHWESTERN MUTUAL'S MOTION FOR SUMMARY JUDGMENT
(2:20-cv-00088-TSZ) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970) .................................................................................................7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .................................................................................................7

*Conrad v. Ace Property & Cas. Ins. Co.,*
    532 F.3d 1000 (9th Cir. 2008) ................................................................................7

*Lakehurst Condo. Owners Assoc. v. State Farm Fire & Cas. Ins. Co.,*
    486 F. Supp. 2d 1205 (W.D. Wash. 2007) ............................................................14

*Matheny v. Unumprovident Corp.,*
    594 F. Supp. 2d 1212 (E.D. Wash. 2009) .............................................................14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) .................................................................................................7

*Warren v. City of Carlsbad,*
    58 F.3d 439 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996) ...........................7

**State Cases**

*Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.,*
    147 Wn. App. 758, 198 P. 3d 514 (2008) ........................................................10, 11

*Canron, Inc. v. Fed. Ins. Co.,*
    82 Wn. App. 480, 918 P.2d 937 (1996) ...................................................................8

*Capelouto v. Valley Forge Ins. Co.,*
    98 Wn. App. 7, 990 P.2d 414 (1999) .....................................................................14

*Christal v. Farmers Ins. Co. of Washington,*
    133 Wn. App. 186, 135 P.3d 479 (2006) ...............................................................11

*Holden v. Farmers Ins. Co. of Wash.,*
    142 Wn. App. 745, 175 P.3d 601, *rev'd on other grounds in Holden v.*
    *Farmers Ins. Co. of Wash.,* 169 Wn.2d 750, 239 P.3d 344 (2010).........................11

*Minahan v. Western Washington Fair Ass'n.,*
    117 Wn. App. 881, 73 P.3d 1019 (2003) .................................................................7

*Mutual of Enumclaw Ins. Co. v. USF Ins. Co.,*
    164 Wn.2d 411, 191 P.3d 866 (2008) ......................................................................8

*Oregon Auto Ins. Co. v. Salzberg,*
    85 Wn.2d 372, 535 P.2d 816 (1975) ........................................................................8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Overton v. Consolidated Ins. Co.*,
    145 Wn.2d 417, 38 P. 3d 322 (2017) .................................................................13, 14

*Rizzuti v. Basin Travel Service of Othello, Inc.*,
    125 Wn. App. 602, 105 P. 3d 1012 (2005) ......................................................14

*Safeco Title Ins. Co. v. Gannon*,
    54 Wn. App. 330, 774 P.2d 30 (1989) ........................................................7, 8

*Sharbono v. Univ. Underwriters Ins. Co.*,
    139 Wn. App. 383, 161 P. 3d 406 (2007) ......................................................15

*State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*,
    121 Wn. App. 358, 88 P.3d 986 (2004) ........................................................11

*Tran v. State Farm Fire & Cas. Co.*,
    136 Wn.2d 214, 961 P.2d 358 (1998) ...........................................................8

**State Statutes**

Revised Code of Washington
    48.30.015.................................................................................................................6
    48.30.015(1)..........................................................................................................15
    48.30.015(5)..........................................................................................................16

Washington Insurance Fair Conduct Act ................................................................ *passim*

**Regulations**

Washington Administrative Code
    § 284-30-30...........................................................................................................16
    § 284-30-330.........................................................................................................16
    §§ 284-30-350-370...............................................................................................16
    § 284-30-350-380.................................................................................................16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I.     INTRODUCTION AND RELIEF REQUESTED

Plaintiff Dr. Tsung H. Hsu is a pain management physician with training in anesthesiology. He is not currently working, and has not worked since he sold his shares in his Pennsylvania pain management practice in 2016. In 2019, Dr. Hsu provided Defendant Northwestern Mutual Life Insurance Company ("Northwestern Mutual") notice of a disability claim under a disability policy he purchased in 2010. Through this litigation, Dr. Hsu asserts this claim retroactively to January 15, 2017. In the process, he incongruously claims disability over time he was not under the care of a licensed physician, was not experiencing significant symptoms from the condition he alleges gave rise to his disability, and was able to work and perform more than 20 procedures per day. Following partial denial of his claim, Dr. Hsu filed the instant case alleging breach of contract and insurance bad faith in January 2020, approximately three years after he claims he became disabled. Dr. Hsu's claims fail for the following reasons:

*First*, Dr. Hsu's claims are barred for the simple reason that they were asserted far outside even the maximum outer time limits provided by the policy. Claims must be submitted within 60 days, or as soon as possible. Proof of claims must be submitted a maximum of one year and 90 days after the monthly period for which benefits are claimed. Dr. Hsu waited three years from the alleged disability onset to file a claim. Notice in 2019 of a claim retroactive to 2017 is obviously insufficient, and has prejudiced Northwestern Mutual in its ability to investigate and process this late claim. Based on the policy's plain language, Dr. Hsu cannot maintain a claim.

*Second*, Dr. Hsu's claims also fail for the independent reason that Dr. Hsu is demonstrably not totally nor partially disabled under his Northwestern Mutual policy. Dr. Hsu is not totally disabled because he is able to perform one or more of the principal procedures of his medical specialty, a fact he admitted to in his deposition and that is borne out in the evidence. At the same time, Dr. Hsu is not partially disabled because he is not gainfully employed (a

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  contractual requirement for benefits).  Thus, Dr. Hsu does not qualify for benefits under the

2  policy.

3      ***Third***, Dr. Hsu's bad faith and Insurance Fair Conduct Act claims must also be

4  dismissed, given Northwestern Mutual's careful review of Dr. Hsu's unusual claim, as well as

5  the fact that summary judgment is appropriate on Dr. Hsu's contractual claims.

6      For all of these reasons, which are further explained below, Northwestern Mutual

7  requests that the Court dismiss Dr. Hsu's complaint on summary judgment in full.

8                    **II.    STATEMENT OF FACTS**

9      **A.    Dr. Hsu's Disability Policy Governs This Case.**

10     Dr. Hsu first contracted with Northwestern Mutual for a Disability Income policy as a

11 pain management physician in 2010.  *See* Hsu Policy (referred to herein as the "Policy"),

12 Declaration of Jill Ostrowski ("Ostrowski Decl."), Ex. A.  The disability provisions in these

13 policies are tied to the insured's ability or lack thereof to perform the principal duties of his

14 "occupation."  *Id.* at NWM_003184 ("The Insured is totally disabled when both unable to

15 perform the principal duties of the regular occupation …").

16     The Policy clarifies the term "regular occupation," providing:  "The words 'regular

17 occupation' mean the occupation of the Insured at the time the Insured becomes disabled."  *Id.*

18 § 1.3.  In his application for insurance, Dr. Hsu defined his occupation as a "physician" with a

19 specialty in "anesthesia and pain management."  *Id.* at NWM_003189.  He further described his

20 job duties as 45 percent epidurals and spine injections and 55 percent "clinic."  *Id.*  As of 2010,

21 Dr. Hsu was a board certified anesthesiologist.  Declaration of Sarah Cox ("Cox Decl."), Ex. A

22 ("Hsu Dep.") at 26:15-23.

23     The Policy requires the insured to provide notice of his claim to Northwestern Mutual

24 "within 60 days after the start of any loss," or "as soon as reasonably possible."  Ostrowski Decl.

25 Ex. A, § 5.1.  The Policy also includes detailed contractual time requirements for written proof of

26 disability, which are triggered at monthly increments.  Specifically, the Policy requires that:

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

> Written proof of loss must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed. If the proof is not given within the 90 days, the claim will not be affected if proof is given as soon as reasonably possible. In any event, the proof required must be given no later than one year and 90 days after the end of each monthly period for which benefits are claimed unless the Owner was legally incapacitated.

*Id.* Dr. Hsu notified Northwestern Mutual of his disability claim on April 15, 2019, more than two years after his claimed disability onset date. *See* Ostrowski Decl. Ex. B; Dkt. 1 ¶ 2.2.

**B.    Dr. Hsu's Work at the Center for Pain Control and Wyomissing Surgical Services.**

Dr. Hsu joined the Center for Pain Control, P.C. ("CPC") and Wyomissing Surgical Services, P.C. ("WSS"), the surgery center owned by CPC, in 2007. Hsu Dep. at 35:2-4. Both operations are based in Wyomissing, Pennsylvania. *Id.* at 34:8-9. He became an owner in CPC and WSS in 2009. *Id.* at 35:11-13. During his nine years at CPC and WSS, Dr. Hsu worked as a pain management physician, evaluating and treating chronic pain patients. *Id.* at 35:2-3. While at CPC and WSS, Dr. Hsu spent one to two days during his 40-50 hour week at WSS, performing non-surgical procedures requiring ultrasound guidance. *Id.* at 41:11-17. He spent two to three days per week doing in-clinic evaluations and treatment at CPC. *Id.* Dr. Hsu testified at his deposition that on "clinic days," he evaluated patients and established their treatment plans, and performed certain procedures not requiring ultrasound, such as steroid injections. *Id.* at 42:23-43:6. He testified that on "procedure days," he performed procedures such as sacroiliac joint injections under fluoroscopy and radiofrequency ablation of nerves. *Id.* at 44:18-45:1-6.

On May 23, 2016, Dr. Hsu notified his partner and colleagues at CPC and WSS that he had sold his shares in the companies to a Dr. Akintomi Olugbodi and that he would be leaving the practice. Cox Decl., Ex. B. Dr. Hsu testified at his deposition that his departure from his Pennsylvania practice was not due to a disability, but because he and his family wanted to move to the West Coast. Hsu Dep. at 56:20-57:2. Dr. Hsu thus acknowledges that he chose to leave CPC and WSS; no healthcare professional advised him to do so. Indeed, Dr. Hsu does not even claim he became disabled until six months later, in January 2017. Dkt. 1 ¶ 2.2.

NORTHWESTERN MUTUAL'S MOTION FOR SUMMARY JUDGMENT (2:20-cv-00088-TSZ) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## C. Dr. Hsu's Stint with The Iowa Clinic.

Dr. Hsu has not worked at all since leaving his Pennsylvania practices in 2016, other than during a three-month locum tenens position at The Iowa Clinic in Des Moines, Iowa. Hsu Dep. 61:23-25. While with The Iowa Clinic, Dr. Hsu worked for 11 hours and saw 10 to 20 patients per day, performing numerous procedures including epidural injections, nerve blocks, and steroid injections. Hsu Dep. 62:1-13; Cox Decl. Ex. C.

## D. Dr. Hsu's Claimed Disability.

Despite his prolific work history, Dr. Hsu asserts that he developed a chronic condition called lateral epicondylitis (better known as "tennis elbow") while *not* working in January 2017, and that the condition has prevented him from performing the principal duties of his work since 2017. Dkt. 1 ¶¶ 2.2, 2.3. However, Dr. Hsu has only ever received sporadic treatment for his condition: from January-April 20, 2017, Dr. Hsu did not consult any medical providers for his condition. Hsu Dep. at 101:17-24. Following that, he saw Dr. Omar Bhatti, an orthopedic physician, intermittently from April to December 2017, for a total of six visits with Dr. Bhatti before being referred to an orthopedic surgeon, Dr. Jerry Huang, for treatment. Cox Decl., Ex. D.[1]

Dr. Hsu visited the orthopedic surgeon's office once (but did not at that visit actually meet with the surgeon), before undergoing a laparoscopic debridement in March 2018. Cox Decl., Ex. F at HSU_00045. Following his surgery, Dr. Hsu reported an 80 percent improvement of his symptoms. *Id.* at HSU 000076. Other than his post-operative appointment on March 19, 2018 and another follow-up appointment on June 25, 2018, *id.* at HSU 000051, Dr. Hsu did not see Dr. Huang—or any other provider—again until more than a year later. On May 20, 2019, Dr. Hsu visited Dr. Huang, and although he reported he was able to work again, he requested that Dr. Huang complete disability for his Northwestern Mutual claim, which Dr. Huang did. *Id. at* HSU 000076. Prior to seeing Dr. Huang in May 2019, Dr. Hsu visited Dr.

---

[1] Dr. Hsu also visited a physical therapist during this time on Dr. Bhatti's referral, but he only attended six of the recommended total 16 appointments before discontinuing physical therapy. Cox Decl., Exs. D at HSU 000100-101 & E at HSU 000094.

NORTHWESTERN MUTUAL'S MOTION FOR SUMMARY JUDGMENT
(2:20-cv-00088-TSZ) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Bhatti on April 30, 2019. Cox Decl. Ex. D at HSU 000271. Dr. Hsu asked Dr. Bhatti to complete his disability paperwork at that appointment too, *id.*, but Dr. Bhatti refused to do so and recommended that Dr. Hsu visit an occupational medicine physician for an overall evaluation regarding any potential disability, *id.* at HSU 000274. Rather than undergoing an occupational evaluation, Dr. Hsu asked Dr. Huang to complete the paperwork, Hsu Dep. at 81:18-19, and did not see another provider for his condition until February 2020. Cox Decl., Ex. F at HSU 00001. He has not seen another medical provider since then. Hsu Dep. at 194:25-195:3.

### E. Dr. Hsu's Untimely Claim for Disability Benefits.

On April 15, 2019, Dr. Hsu notified Northwestern Mutual that he intended to submit a disability claim. Ostrowski Decl., Ex. B. He did not, however, submit a completed request for disability benefits (i.e., a claim application) until June 11, 2019. Ostrowski Decl. Ex. C. Unlike in his Complaint, Dr. Hsu stated in his claim application that his alleged disability did not prevent him from working the usual duties and/or hours of his occupation until March 22, 2019. *Id.* at NWM_002478.

Northwestern Mutual administered Dr. Hsu's claim by careful and thorough review, including two reviews by a medical doctor, a consultation by a registered nurse, and by a telephonic interview between Dr. Hsu and Northwestern Mutual's claim specialist in an attempt to understand his claim. Ostrowski Decl., Exs. D & E. After review of Dr. Hsu's nearly 2,000 page claim file, Ostrowski Decl. ¶ 9, Northwestern Mutual lacked any evidence that Dr. Hsu was *unable* to perform his principal duties as a pain management physician during the 2017 to the then-present time period, other than for the three months in which he underwent and was recovering from surgery. *Id.*, Ex. F.

Dr. Hsu's policy requires him to submit proof of disability, which is established when the information considered supports finding the insured is *unable* to perform the duties of his occupation. *See* Ostrowski Decl., Ex. A § 5.1. Northwestern Mutual relies in part on medical documentation to verify that a disabling condition exists. Ostrowski Decl. ¶ 10. Dr. Hsu failed to provide sufficient proof of disability, despite Northwestern Mutual's requests throughout the

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

claim process. Specifically, Northwestern Mutual's consulting physiatrist concluded the medical records submitted by Dr. Hsu did not corroborate Dr. Hsu's assertion that his elbow condition resulted in disabling occupational limitations. Ostrowski Decl., Ex. E. While Dr. Hsu may have suffered pain in his elbow, he was not unable to perform his primary occupational duties, such as in-clinic patient consultation, injections, and epidurals. This is established most starkly by the fact that he was able to work for three months at The Iowa Clinic, during which time he performed nearly 600 procedures without incident. Cox Decl., Ex. C. Northwestern Mutual nevertheless gave Dr. Hsu the benefit of the doubt as to his claim, and awarded him partial benefits for the period of March 8, 2018 – June 8, 2018. Ostrowski Decl., Ex. F.

### III. ISSUES PRESENTED

1. Whether summary judgment dismissal of Dr. Hsu's claims is appropriate, given that Dr. Hsu's disability insurance claim was untimely.

2. Whether the Court should grant summary judgment dismissal of Dr. Hsu's claims because Dr. Hsu is not totally or partially disabled, given that he is able to perform one or more of the principal duties of his regular occupation but is not gainfully employed.

3. Whether the Court should dismiss Dr. Hsu's bad faith claims on summary judgment because Northwestern Mutual appropriately examined his claim in compliance with Washington law, and that summary judgment is appropriate on Dr. Hsu's contractual claims.

### IV. EVIDENCE RELIED UPON

Northwestern Mutual relies on the declarations of Jill Ostrowski and Sarah Cox, as well as the exhibits accompanying those declarations. Northwestern Mutual also relies on the filings and pleadings with the Court in this matter.

### V. AUTHORITY AND ARGUMENT

Dr. Hsu has asserted three causes of action against Northwestern Mutual arising out of the company's partial denial of disability benefits: (1) breach of contract; (2) bad faith insurance denial; and (3) violation of the Washington Insurance Fair Conduct Act, RCW 48.30.015

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

("IFCA"). For the reasons outlined below, summary judgment should be granted in favor of Northwestern Mutual on each of Dr. Hsu's claims.

### A. Summary Judgment Standard.

Summary judgment is warranted when no material issues of fact exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). The party moving for summary judgment has the initial burden to show an absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the nonmoving party has the burden to establish the existence of an issue of fact regarding an essential element and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To discharge his burden, the nonmoving party cannot rely on the pleadings, but must instead come forth with evidence showing that there is a genuine issue for trial. *Id.* at 324. Implausible conclusions drawn from the evidence are insufficient to carry this burden. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"); *cf. Minahan v. Western Washington Fair Ass'n.*, 117 Wn. App. 881, 887, 73 P.3d 1019 (2003) (when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law) (remanded for entry of summary judgment). Pure issues of law, such as the interpretation of an insurance policy, are appropriate for summary judgment disposition. *Conrad v. Ace Property & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008). Northwestern Mutual has met its burden, and Dr. Hsu cannot satisfy his burden to show that any issues of material fact exist.

### B. Plaintiff Failed to Provide Timely Notice and Proof to Northwestern Mutual, as Required By His Insurance Contracts.

Dr. Hsu's breach of the notice and proof of disability provisions in his Policy compel dismissal of his claims, as insurance carriers may defend against coverage solely due to an insured's failure to provide timely notice or proof of claim. *See, e.g., Safeco Title Ins. Co. v.*

NORTHWESTERN MUTUAL'S MOTION FOR SUMMARY JUDGMENT
(2:20-cv-00088-TSZ) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Gannon*, 54 Wn. App. 330, 336, 774 P.2d 30 (1989). Generally, an insured's failure to timely notify an insurer of a claim as required by the policy is tantamount to a breach of the insured's obligation to cooperate with the insurer. *Id.* An insurer claiming a breach of a cooperation clause in an insurance contract must show actual prejudice resulting from the breach. *Oregon Auto Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376, 535 P.2d 816 (1975). Actual prejudice may be demonstrated by "some concrete detriment resulting from the delay which harms the insurer's preparation or presentation of defenses to coverage or liability." *Canron, Inc. v. Fed. Ins. Co.*, 82 Wn. App. 480, 486, 918 P.2d 937 (1996). For example, the court may consider whether a delay in notice interfered with an insurer's ability to evaluate or investigate a claim. *See id.* at 491 ("Lost witnesses or documents, or changes to the physical site, may affect the ability to investigate.").

Prejudice can arise as a matter of law when the lack of cooperation hampers the insurer's ability to determine the validity of the policyholder's claim. *Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 231, 961 P.2d 358 (1998) (finding prejudice as a matter of law "[b]ecause, in the final analysis, it is uncontroverted that [the policyholder's] intransigence prevented State Farm from completing a legitimate investigation in order to determine whether or not coverage should be provided, it follows that State Farm suffered prejudice."); *see also Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 430, 191 P.3d 866 (2008) ("If the insurer claims that it was deprived of the ability to investigate, it must show that the kind of evidence that was lost would have been material to its defense.").

      **1.**        **Northwestern Mutual is Entitled to Summary Judgment on Plaintiffs' Benefits Claim Due to His Failure to Provide Notice Within 60 Days of the Onset of His Claimed Disability.**

Here, Dr. Hsu is seeking benefits under his Northwestern Mutual policy beginning with a claimed total disability retroactive to January 15, 2017. Dkt. 1 ¶ 2.2. There is no dispute that Dr. Hsu's policy required him to provide notice of a claim to Northwestern Mutual within 60 days and proof of claim within 90 days after the start of any loss for which he was seeking benefits. *See* Ostrowski Decl., Ex. A § 5.1. Similarly, there is no dispute that Dr. Hsu did not provide

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Northwestern Mutual notice of his claim until more than two years later, in April 2019. Ostrowski Decl., Ex. B.

Dr. Hsu's dilatory assertion of such a retroactive claim has substantially and actually prejudiced Northwestern Mutual in its handling of Dr. Hsu's claim. *See* Ostrowski Decl. ¶ 11. Submitting a claim two years after the onset of disability prevented Northwestern Mutual from conducting its own independent medical examination of Dr. Hsu while he was still working, precluding it from determining the nature and extent of his claimed condition and job tasks at that time. *Id.* Instead, the only independent examination of Northwestern Mutual has been during this litigation. Cox Decl. ¶ 11. Even if Northwestern Mutual had sought to independently examine Dr. Hsu, it would not have been on notice that it needed to do so until two years after the alleged onset of his disability, and more than a year after his surgery. Ostrowski Decl., Ex. B; Cox Decl., Ex. F at HSU 000052. This is prejudicial, as Dr. Hsu's retroactive claim is based on his own subjective assessment of pain in 2017, which would be difficult enough to address at the time, let alone two years later. Ostrowski Decl. ¶ 11. Moreover, the providers who contemporaneously treated Dr. Hsu between 2017-2018 (and met with him once in 2019) each testified that they could not remember or recall many of the material facts, such as what was discussed at his relatively few appointments with them. *See, e.g.*, Cox Decl., Ex. G, Dr. Huang Dep. at 40:15-22; 54:6-19; 68:8-13; Cox Decl., Ex. H, Dr. Bhatti Dep. at 25:25-26:5; 31:18-20; 51:16-24; 79:10-13. Furthermore, had Dr. Hsu timely submitted his claim, Northwestern Mutual would have had contemporaneous claim forms, required Dr. Hsu to be under regular medical care, and arranged for contemporaneous reporting and confirmation of his activities. Northwestern Mutual's inability to have Dr. Hsu examined while he was still seeking work and to verify Dr. Hsu's condition and treatment concomitantly was a concrete detriment to Northwestern Mutual's investigation of his claim.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**2.      Northwestern Mutual Is Entitled, at Minimum, to Summary Judgment on Plaintiff's Benefits Claims Prior to March 2018.**

At the very least, Dr. Hsu's cause of action for benefits prior to March 13, 2018 must be dismissed based on the plain language of his insurance contract. There is no dispute that Dr. Hsu failed to submit any proof of his claim until June 11, 2019, at the earliest. Ostrowski Decl., Ex. C. Further, there is no dispute that Dr. Hsu's policy required him to submit proof of his benefits claim within 90 days after the end of each monthly period for which benefits are claimed. Ostrowski Decl., Ex. A § 5.1. If Dr. Hsu was unable to provide written proof of disability within that 90-day period, his claim would not be affected so long as written proof of disability was provided as soon as reasonably possible. *Id.* His contract clarified that "as soon as reasonably possible" means in no event later than one year and 90 days after the end of each monthly period for which benefits are claimed. *Id.*

This means that in order to claim disability benefits under his insurance policy for the month of January 2017, Dr. Hsu was required to submit written proof of his disability as soon as reasonably possible, and in no event more than one year and 90 days later (i.e,. by the end of April 2018). *See* Ostrowski Decl., Ex. A § 5.1. Yet Dr. Hsu neglected to notify Northwestern Mutual of his claim until April 2019, and there is no dispute that he did not submit any further information on his claim until June 2019. *Id.*, Exs. B & C. The previously cited policy provisions only entitled Dr. Hsu to benefits for months for which he submitted proof of disability within one year and 90 days. *Id.*, Ex. A § 5.1. But because Dr. Hsu failed to submit any proof of disability until June 2019, he is not entitled to any benefits prior to March 2018.[2]

Northwestern Mutual suffered actual and substantial prejudice as a result of Dr. Hsu's late submission of his notice of claim. Additionally, there is no dispute that Dr. Hsu failed to comply with the proof of disability policy provisions. These failures materially affected Northwestern Mutual's ability to assess Dr. Hsu's claim adequately, prejudicing Northwestern Mutual and rending summary judgment on Dr. Hsu's claims appropriate.

---

[2] 2017, 2018, and 2019 were all 365-day years. 365 plus 90 equals 455. 455 days before June 11, 2019 was March 13, 2018.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### C.   Dr. Hsu's Breach of Contract Claim Fails.

Dr. Hsu's breach of contract claim should be dismissed for the independent reason that he cannot present any admissible evidence that he is or was disabled under the Policy for any time period other than March 8, 2018 to June 8, 2018. Under Washington law, courts construe insurance policies as they would any contract. *See Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 765, 198 P. 3d 514 (2008). As such, a court must consider the policy as a whole and give it a fair and reasonable construction, as would the average person purchasing insurance. *Id.* If the policy language is clear and unambiguous, "the court must enforce it as written and may not modify it or create ambiguity where none exists." *Id.* at 765-66.

Where an insurance policy provides definitions, a court is bound by those definitions. *Christal v. Farmers Ins. Co. of Washington*, 133 Wn. App. 186, 191, 135 P.3d 479 (2006). Where an insurance policy does not provide definitions, a Washington court will give terms "their plain, ordinary, and popular meaning, as defined in standard English dictionaries." *Id.* Only after Washington courts examine the dictionary meaning of a term do they evaluate ambiguity. *See State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc.*, 121 Wn. App. 358, 363-65, 88 P.3d 986 (2004). A provision may be found ambiguous only "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Holden v. Farmers Ins. Co. of Wash.*, 142 Wn. App. 745, 749, 175 P.3d 601, *rev'd on other grounds in Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 239 P.3d 344 (2010). A party's purported subjective understanding of policy terms is irrelevant as the "unexpressed intention of one party is meaningless as to the mutual intention of the parties." *See English Cove Ass'n, Inc.*, 121 Wn. App. at 363.

### 1.   Dr. Hsu's Breach of Contract Claim Fails Because He Is Not Disabled.

Dr. Hsu's claim fails because he lacks evidence he is disabled. Under the Medical Occupation Definition of Total Disability under the Policy, the insured is totally disabled when "both unable to perform the principal duties of the regular occupation and not gainfully

NORTHWESTERN MUTUAL'S MOTION FOR SUMMARY JUDGMENT
(2:20-cv-00088-TSZ) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

employed in any occupation." Ostrowsk Decl., Ex. A at NWM_003184. There is no dispute that Dr. Hsu can perform the principal duties of his regular occupation, as shown by his 11-week stint at The Iowa Clinic, during which he performed *numerous* procedures and saw many patients in an extremely short time period, shortly before notifying Northwestern Mutual of his claim. *See* Cox Decl., Ex. F at HSU 000076 (explaining that Dr. Hsu "was finally able to return to work as a Pain Medicine physician doing procedures such as injections and spinal cord stimulators, doing locum work in Iowa for 11 weeks."); Cox Decl., Ex. C; Hsu Dep. at 71:12-25.

If, as with Dr. Hsu, the insured can perform one or more of the principal duties of his regular occupation, he will be considered totally disabled only if:

- more 50 percent of the Insured's time in the regular occupation at the time the disability began was devoted to direct patient care and services;

- the insured is not gainfully employed in any occupation; and

- at the time the disability began, the Insured was primarily engaged:

    (i)    in a procedure based medical or dental specialty …and the Insured is unable to perform the principal procedures of the medical or dental specialty. …; or

    (ii)   in a non procedure-based medical or dental specialty … and the Insured is unable to perform the principal duties of non procedure - based patient care and services. …

Ostrowski Decl., Ex. A at NWM_003184. Dr. Hsu cannot establish that he is totally disabled under this provision of the Policy because, at the time the disability began, Dr. Hsu was not primarily engaged in an insurance-based medical or dental specialty and unable to perform the principal procedures of the specialty. As discussed above, Dr. Hsu *is* indisputably *able* to perform the principal procedures of his specialty. While at The Iowa Clinic, he performed nearly 600 procedures. Cox Decl., Ex. C. Moreover, he admitted in his deposition that he was able at The Iowa Clinic to perform all of the "bread-and-butter" procedures of his normal practice. Hsu Dep. at 62:1-13. The only procedures he did not perform there were the "fancy" procedures, *id*.

NORTHWESTERN MUTUAL'S MOTION FOR SUMMARY JUDGMENT
(2:20-cv-00088-TSZ) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  at 62:4-19, which Dr. Hsu testified that he did not perform "that often," even prior to his

2  disability, *id.* at 63:1-21.

3       Additionally, Dr. Hsu cannot show that he was employed in *any* occupation at the time

4  his disability began, let alone his "regular occupation."  Under Section 1 of the Policy, the

5  insured's "regular occupation" is "the occupation of the insured at the time the Insured becomes

6  disabled."  Ostrowski Decl., Ex. A at NWM_003184.  It is undisputed that Dr. Hsu was not

7  employed at all from June 2016 through December 2018.  Cox Decl. Ex. I at pp. 2-3.

8  Accordingly, he cannot establish a regular occupation under the Policy, and is not entitled to

9  benefits.  Ostrowski Decl., Ex. A at NWM_003184.

10       In summary, the undisputed evidence establishes that Dr. Hsu was able to work full time,

11  without interruption, during his alleged period of disability, and that he did not have a "regular

12  occupation" at the time he claims his disability began.  Accordingly, he has no claim for total

13  disability under his Policy.

14         **2.**       **Dr. Hsu's Breach of Contract Claim Fails Because He Is Not Partially Disabled.**

15       Dr. Hsu is additionally not partially disabled.  To qualify for benefits as partially

16  disabled, the Insured must be (a) unable to perform one or more, but not all of the principal

17  duties of the regular occupation; or spend as much time at the regular occupation as before the

18  disability started.  Ostrowski Decl., Ex. A § 1.5(a).  Additionally, the insured must have had at

19  least a 20 percent loss of earned income caused by the disability, *and* the insured must be

20  gainfully employed in an occupation.  *Id.* §§ 1.5(b) and (c).  Dr. Hsu has indisputably been

21  unemployed since his locum tenens position at The Iowa Clinic ended on March 22, 2019.  Cox

22  Decl., Ex. I at pp. 2-3.  Accordingly, any breach of contract claim for proportionate benefits

23  under the Policy must fail.

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**D. Dr. Hsu's Bad Faith and IFCA Claims Also Fail as a Matter of Law.**

    **1. Dr. Hsu's Bad Faith Claim Fails as a Matter of Law Because Northwestern Mutual Acted Reasonably Under the Circumstances.**

Given that summary judgment is appropriate for Dr. Hsu's claims, no bad faith claims against Northwestern Mutual should remain. Moreover, given Northwestern Mutual's careful investigation and reasonable decision based on the facts, Dr. Hsu cannot raise any question of fact regarding his claims alleging that Northwestern Mutual acted in bad faith. Claims of insurance "bad faith are not easy to establish and an insured has a heavy burden to meet." *Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417, 433, 38 P. 3d 322 (2017) (affirming summary judgment for insurer on bad faith claim). The insured "must come forward with evidence that the insurer acted unreasonably." *Lakehurst Condo. Owners Assoc. v. State Farm Fire & Cas. Ins. Co.*, 486 F. Supp. 2d 1205, 1213 (W.D. Wash. 2007) (granting summary judgment in favor of insurer on bad faith claim) (*citing Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 486 (2003)). There is no claim for bad faith where "the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interest." *Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1226 (E.D. Wash. 2009) (internal citation omitted).

Regarding claim investigations specifically, the standard for an insurer is reasonableness under the circumstances. A reasonable investigation need not be completely exhaustive. *See, e.g.*, *Lakehurst*, 486 F. Supp. 2d at 1214 (noting that allegations by the insured that further investigation was required were themselves unreasonable); *Capelouto v. Valley Forge Ins. Co.*, 98 Wn. App. 7, 20, 990 P.2d 414 (1999) (noting that further investigation would not have invalidated the insurer's defense to coverage). Similarly, for denials of coverage, only "[a] denial of coverage that is unreasonable, frivolous, or unfounded constitutes bad faith." *See Lakehurst*, 486 F. Supp. At 1213; *Overton*, 145 Wn.2d at 455. A "[d]enial of coverage based on a mistaken assumption of the insurer is not in bad faith unless the denial is both frivolous and unfounded." *Rizzuti v. Basin Travel Service of Othello, Inc.*, 125 Wn. App. 602, 617, 105 P. 3d 1012 (2005). The "test is not whether the insurer's interpretation of the policy is correct but whether the insurer's conduct was reasonable." *Lakehurst*, 486 F. Supp. 2d at 1213.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

In reviewing Dr. Hsu's claim, Northwestern Mutual was confronted with an insured who asserted he was disabled retroactive to 2017, but who was indisputably able to work extremely productively for three straight months prior to submitting notice to Northwestern Mutual of his disability. *See* Ostrowski Decl., Exs. B & C; Cox Decl., Ex. C. That Dr. Hsu was disabled during this time period and from thereon out defies logic. Nonetheless, Northwestern Mutual conducted a careful and detailed investigation, and made its coverage decision based on all of the information available to it during the investigation. Northwestern Mutual's investigation included:

- obtaining Dr. Hsu's medical records;
- interviewing Dr. Hsu;
- obtaining an attending physician statement;
- reviews of Dr. Hsu's claim by a registered nurse and physiatrist; and
- a prompt claim decision that fully explained the basis for Northwestern Mutual's determination.

*See, e.g.* Ostrowski Decl. ¶12; Exs. D, E, F. Furthermore, Dr. Hsu's work at The Iowa Clinic showed that he had worked in a high volume job with very little adjustment other than not performing two types of procedures he rarely performed anyway. Hsu Dep. at 62:4-19.

Despite now claiming that he had been totally unable to work in his profession since 2017, Dr. Hsu received relatively little care for his claimed disabling condition during the 2017-2019 timeframe, and he was not under the care of a physician at all in 2019 or 2020, save for three follow-up appointments, during two of which he requested that his doctors complete his disability paperwork. *Id.* at 190:9-18; 192:24-193:2; 193:13-194:12. Northwestern Mutual also conducted an interview of Dr. Hsu and had a medical doctor and registered nurse review his claim. Ostrowski Decl., Ex. E, ¶ 12. Neither of these medical professionals opined that Dr. Hsu was disabled from his profession. *See id.*

Under these circumstances, Northwestern Mutual's decision to deny Dr. Hsu's claim cannot be said to be frivolous and unfounded. The operative question in insurance bad faith

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

claims is "always whether the insurer acted reasonably under the facts and circumstances of the case." *Sharbono v. Univ. Underwriters Ins. Co.*, 139 Wn. App. 383, 421, 161 P. 3d 406 (2007). Northwestern Mutual made its determination based on the best information available to it at the time, going to far as to use his former occupation and duties to analyze his claims when it knew he had been effectively unemployed since 2016. Ostrowski Decl., Ex. F at NWM_001293. In the face of evidence demonstrating Northwestern Mutual's diligence and reasonableness, Dr. Hsu cannot meet his burden to show that there is evidence from which a reasonable trier of fact could conclude that Northwestern Mutual's actions were unreasonable.

2. **Dr. Hsu's IFCA Claim Fails as a Matter of Law Because Northwestern Mutual Acted Reasonably Under the Circumstances.**

Lastly, Dr. Hsu's IFCA claim also fails. The IFCA provides that an insured whose claim is unreasonably denied may seek relief from a court against the insurer. RCW 48.30.015(1). In addition to whether the insured acted "reasonably" (discussed above), the IFCA incorporates specific claims handling practices that constitute violations of the IFCA. RCW 48.30.015(5). Those practices include the violations codified at Washington Administrative Code ("WAC") § 284-30-30 and 284-30-350-380. *Id.* (Dr. Hsu only alleges claims arising from WAC §§ 284-30-30 and 284-30-350-370). There is absolutely no evidence in this case that Northwestern Mutual engaged in *any* of the practices identified in those WAC sections, and Dr. Hsu cannot present any evidence to the contrary. Specifically, Dr. Hsu cannot show that Northwestern Mutual ever misrepresented any policy provisions, failed to acknowledge pertinent communications, or failed to evaluate his claims promptly. WAC §§ 284-30-350-370. It is further undisputed that Northwestern Mutual did not engage in any of the 19 unfair claims settlement practices enumerated in the IFCA, because Northwestern Mutual did not settle Dr. Hsu's claim. WAC § 284-30-330; Ostrowski Decl. ¶ 13. Thus, summary judgment dismissal is appropriate on this claim as well.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# VI.    CONCLUSION

For the foregoing reasons, Dr. Hsu's case against Northwestern Mutual should be dismissed with prejudice.


DATED this 21st day of January, 2021.

**Davis Wright Tremaine LLP**
Attorneys for Defendant


By *s/ Sarah E. Cox*
  Sarah E. Cox, WSBA #46703
  James Howard, WSBA #37259
  920 Fifth Ave., Ste. 3300
  Seattle, WA 98104-1610
  Ph:  (206) 622-3150
  Fax:  (206) 757-7700
  sarahcox@dwt.com
  jameshoward@dwt.com

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax