UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TSUNG H. HSU,

        Plaintiff,

  v.

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

        Defendant.

C20-88 TSZ

ORDER

THIS MATTER comes before the Court on a motion for summary judgment, docket no. 24, brought by Defendant Northwestern Mutual Life Insurance Company's ("NWM"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Plaintiff Tsung H. Hsu, M.D. is a physician specializing in interventional pain management. Complaint (docket no. 1 at 2). In describing his job duties, Dr. Hsu explained that 45 percent was "epidurals and spine injections" and 55 percent was "clinic." Ex. A to Ostrowski Decl. (docket no. 26-1 at 23). In 2010, while working at his practice in Pennsylvania, Dr. Hsu contracted with NWM for a disability income policy

ORDER - 1

(the "Policy"). Id. at 2. Because Dr. Hsu selected the Medical Plan Option, "total disability" occurred in two circumstances:

> [1]  The Insured is totally disabled when both unable to perform the principal duties of the regular occupation and not gainfully employed in any occupation.
>
> [2]  If the Insured can perform one or more of the principal duties of the regular occupation, the Insured will be considered totally disabled if:
>
> - more than 50% of the Insured's time in the regular occupation at the time the disability began was devoted to providing direct patient care and services;
>
> - the Insured is not gainfully employed in any occupation; and
>
> - at the time disability began, the Insured was primarily engaged:
>
>   (i) in a procedure-based medical or dental specialty for which board certification is available and the Insured is unable to perform the principal procedures of the medical or dental specialty.  The Insured will be considered to have been primarily engaged in a procedure-based medical or dental specialty if billing codes during the 12 months before the disability began demonstrate that more than 50% of the Insured's charges for patient care and services resulted directly from principal procedures performed by the Insured; or
>
>   (ii) in a non procedure-based medical or dental specialty for which board certification is available and the Insured is unable to perform the principal duties of non procedure-based patient care and services.  The Insured will be considered to have been primarily engaged in a non procedure-based medical or dental specialty if billing codes during the 12 months before the disability began demonstrate that more than 50% of the Insured's charges for patient care and services resulted directly from non procedure-based patient care and services performed by the Insured.

Id. at 4, 18.  "Regular occupation" means "the occupation of the Insured at the time the Insured becomes disabled." Id. at 7.

ORDER - 2

The Policy requires an insured to notify NWM of a claim "within 60 days after the start of any loss" covered by the Policy or, if the insured cannot give notice within 60 days, "it must be given as soon as reasonably possible." Id. at 13.  The Policy further requires the insured to provide written proof of loss "within 90 days after the end of each monthly period for which benefits are claimed" or as soon as reasonably possible, but "[i]n any event . . . no later than one year and 90 days after the end of each monthly period for which benefits are claimed." Id.

In 2016, Dr. Hsu left his practice to move to the West Coast.  Ex. B to Cox Decl. (docket no. 25-2); Hsu Dep., Ex. A to Cox Decl. (docket no. 25-1 at 56–57).  Then, in January 2017, before Dr. Hsu resumed practicing, he began experiencing symptoms of "constant right elbow pain that exacerbate[d] with wrist extension and/or elbow flexion." Ex. F to Ostrowski Decl. (docket no. 26-6 at 2).  In April 2017, Dr. Hsu consulted an orthopedic physician, Omar Bhatti, M.D., regarding his elbow pain.  Hsu Dep., Ex. A to Cox Decl. (docket no. 25-1 at 101); Ex. F to Ostrowski Decl. (docket no. 26-6 at 5).  Eventually, Dr. Bhatti referred Dr. Hsu to an orthopedic surgeon, Jerry Huang, M.D., for treatment.  Hsu Dep., Ex. A to Hsu Decl. (docket no. 31-1 at 157).  Dr. Huang performed surgery, specifically a right elbow arthroscopy with synovectomy and debridement of extensor carpi radialis brevis tendon, on March 8, 2018.  Ex. E to Ostrowski Decl. (docket no 26-5 at 8).

After the surgery, Dr. Hsu decided to return to work on a trial basis.  Hsu Dep., Ex. A to Hsu Decl. (docket no. 31-1 at 245).  To that end, Dr. Hsu started working at the Iowa Clinic in January 2019.  Hsu Dep., Exh. A to Cox Decl. (docket no. 25-1 at 61).

1  The trial period lasted until March 2019.  Id.  Dr. Hsu began with performing one to two

2  procedures a day, eventually working his way up to performing 22 procedures a day.

3  Hsu Dep., Ex. A to Hsu Decl. (docket no. 31-1 at 250).  Any time Dr. Hsu had to extend

4  his wrist for five or ten seconds, however, he would begin to feel pain.  Id.  Dr. Hsu

5  explained that, when performing a procedure, he could not safely move out of the

6  position causing him pain.  Id.  As such, work activities, like intervention procedures,

7  continued to be difficult.  Hsu Dep., Ex. A to Hsu Decl. (docket no 31-1 at 248–51).

8       In April 2019, Dr. Hsu notified NWM that he intended to submit a claim for

9  disability benefits.  Ex. B to Ostrowski Decl. (docket no. 26-2).  At a follow-up

10  appointment with his surgeon the next month, Dr. Hsu reported that the surgery improved

11  his symptoms by 80 percent.  Ex. E to Ostrowski Decl. (docket no 26-5 at 8).  Despite

12  this improvement, Dr. Hsu states that he is "unable to safely perform the necessary

13  procedures of an interventional pain management physician in a sustainable manner."

14  Hsu Decl. (docket no. 31 at 1).

15       Dr. Hsu submitted his claim application in June 2019.  Ex. C to Ostrowski Decl.

16  (docket no. 26-3).  NWM reviewed Dr. Hsu's claim, and, in August 2019, informed him

17  that it was rejecting his claim, except for the three months during which he underwent

18  and recovered from surgery.  Ex. F to Ostrowski Decl. (docket no. 26-6).

19       Dr. Hsu then filed a complaint for breach of contract, bad faith, and violations of

20  Washington's Insurance Fair Conduct Act ("IFCA").  Complaint (docket no. 1).  NWM

21  moves for summary judgment on all claims.

22

23

ORDER - 4

**Discussion**

   **A. Summary Judgment Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. Id. at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. See Beard v. Banks, 548 U.S. 521, 529 (2006) ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting Celotex, 477 U.S. at 322)).

   **B. Timeliness**

NWM asserts that Dr. Hsu breached the Policy's notice and proof of disability provisions, and that this requires the Court to dismiss his claims.

      **a. Claim Period**

The Policy requires insureds to provide written proof of loss "no later than one year and 90 days after the end of each monthly period for which benefits are claimed."

ORDER - 5

Policy (docket no. 26-1 at 13).  Dr. Hsu does not dispute that he did not submit any proof of claim until June 11, 2019.  Therefore, under the Policy, he cannot obtain any benefits prior to March 2018.[1]  The Court grants summary judgment in favor of NWM as to any claim for benefits prior to March 2018.

### b. Prejudice

An insured's "[n]oncompliance with a policy provision does not deprive the insured of the benefits of the policy unless the insurer demonstrates actual prejudice resulting from the insured's noncompliance."  Canron, Inc. v. Fed. Ins. Co., 82 Wn. App. 480, 485, 918 P.2d 937 (1996).  "[T]o show prejudice, the insurer must prove that an insured's breach of a notice provision had an identifiable and material detrimental effect on its ability to defend its interests."  Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 430, 191 P.3d 866 (2008).  When an insurer asserts prejudice based on losing the opportunity to investigate, it must show that the type of evidence it lost would have been material to its defense.  Id.  But "[w]hether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law."  Id. at 427.  The insurer bears the burden to prove actual and substantial prejudice from the breach.  Id.

NWM argues that Dr. Hsu's late notice prevented it from conducting its own independent medical examination of him while he was working, which in turn

---

[1] One year and 90 days before June 11, 2019, is March 13, 2018.  Because the Policy requires written proof of loss no later than one year and 90 days before *the end of each monthly period* for which benefits are claimed, and Dr. Hsu submitted proof of claim before the end of March 2018, that is the first month for which he may claim benefits.

ORDER - 6

"preclude[ed] it from determining the nature and extent of his claimed condition and job tasks." Motion for Summary Judgment (docket no. 24 at 9). Whether this evidence would be material to NWM's defense, however, is an issue of fact that precludes summary judgment. This conclusion is especially true because NWM had access to Dr. Hsu's medical records. Ostrowski Decl. (docket no. 26 at ¶12); See Canron, Inc., 82 Wn. App. at 489–90 (holding that lost ability to investigate was not per se prejudicial where other investigative records were available). The Court denies summary judgment on the issue of whether Dr. Hsu's late notice prejudiced NWM.

**C. Breach of Contract**

NWM contends that Dr. Hsu's breach of contract claim fails as a matter of law because he is not totally or partially disabled under the Policy.[2]

"Courts construe insurance policies as contracts." Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co., 147 Wn. App. 758, 765, 198 P.3d 514 (2008). When interpreting insurance policies, courts consider the policy as a whole and give it the fair and reasonable interpretation that the average person purchasing insurance would give it. Id. Courts "must apply the definitions set forth in an insurance policy." Christal v. Farmers Ins. Co. of Wash., 133 Wn. App. 186, 191, 135 P.3d 479 (2006).

---

[2] In its Reply, NWM challenges the admissibility of evidence Dr. Hsu offered in his Response, specifically, the written reports of the parties' experts and the deposition testimony and written statements of Dr. Hsu's treating providers. Reply (docket no. 36 at 6). Because the Court does not rely on any of the challenged evidence in this Order, it does not address the merits of this issue.

ORDER - 7

### a. Total Disability

The Policy gives two definitions for when an insured is totally disabled. Under the first definition, an "Insured is totally disabled when both unable to perform the principal duties of the regular occupation and not gainfully employed in any occupation." Policy at 18. NWM asserts that Dr. Hsu is not totally disabled under this definition because he performed numerous procedures while working at the Iowa Clinic. Dr. Hsu states in his declaration, however, that he is "unable to safely perform the necessary procedures of an interventional pain management physician in a sustainable manner." Hsu Decl. (docket no. 31 at 1). At his deposition, Dr. Hsu further explained that, though his symptoms improved after his surgery, he had difficulties performing surgeries while at the Iowa Clinic and that is why he did not pursue other work. Hsu Dep., Ex. A to Hsu Decl. (docket no 31-1 at 248–49). Viewing the evidence in the light most favorable to Dr. Hsu, his statements raise an issue of fact as to whether he could perform the principal duties of his occupation. Therefore, the Court cannot resolve this matter on summary judgment.

NWM also asserts that Dr. Hsu cannot demonstrate that he is disabled under the Policy's second definition of total disability, which lays out requirements for insureds to qualify as totally disabled if they are able to perform one or more of the principal duties of their regular occupation. Policy (docket no. 26-1 at 18). This argument, however, also raises a factual issue as to whether Dr. Hsu can perform the principal duties of his regular occupation, and therefore cannot be determined on summary judgment.

NWM further contends that Dr. Hsu cannot demonstrate that he meets the Policy's definitions of total disability because, as he was not employed at the time his disability began, he did not have a "regular occupation."  Under the Policy, "regular occupation" means "the occupation of the Insured at the time the Insured becomes disabled."  Policy at 7.  But whether Dr. Hsu's lack of employment during his move to the West Coast precludes him from having the "regular occupation" of physician specializing in interventional pain management is debatable.  The trier of fact should resolve this issue after a full hearing on the merits.  See Loran v. Dairyland Ins. Co., 42 Wn. App. 17, 19, 707 P.2d 1378 (1985) (stating that whether a two-year hiatus prevents a person from being classified as usually engaged in an occupation was debatable and the court should not have resolved the issue on summary judgment).  The Court denies summary judgment on the issue of whether Dr. Hsu was totally disabled under the Policy.

  **b.  Partial Disability**

NWM argues that Dr. Hsu is not partially disabled under the Policy because he has not been employed since his work at the Iowa Clinic ended.  The Policy's definition of "partial disability" requires the insured to be gainfully employed in an occupation.  Policy at 7.  Dr. Hsu does not contest that he is not gainfully employed and has not been since leaving the Iowa Clinic.  For this reason, Dr. Hsu cannot meet the Policy's definition of "partial disability" as a matter of law.  The Court grants summary judgment in favor of NWM on this issue.

//

//

**D. Bad Faith/IFCA**

NWM contends that Dr. Hsu's bad faith and IFCA claims fail as a matter of law because its decision to deny his claim was reasonable.

An insured alleging bad faith must show that the insurer's breach of the insurance contract "was unreasonable, frivolous, or unfounded." Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003). Regarding bad faith claims, "[t]he insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds." Id. at 486. An insurer pointing to a reasonable basis for its action constitutes significant evidence that it did not act in bad faith. Id. "Ordinarily, whether an insurer acts in bad faith is a question of fact for the jury." Costco Wholesale Corp. v. Arrowood Indem. Co., 387 F.Supp.3d 1165, 1178 (W.D. Wash. 2019). Similarly, IFCA provides a claim of action for insureds who are unreasonably denied a claim for coverage or payment of benefits. RCW 48.30.015(1).

NWM asserts that its decision to deny Dr. Hsu's claim was reasonable because it reviewed his medical records, interviewed him, and obtained an attending physician statement. Additionally, NWM states that it had a medical doctor and registered nurse review his claim, and neither opined that Dr. Hsu was disabled from his profession.

NWM, however, has offered inconsistent information about the investigation it performed. Dr. Hsu presented evidence that NWM did not investigate treatment records after August 23, 2018, stating that the consulting physiatrist "found no evidence to support limitations after August 31, 2018[,] as there were no medical records for her review past August 23, 2018." Ostrowski Dep., Ex. K to Cowell Decl. (docket no. 32-11

at 54–55); Ex. F to Ostrowski Decl. (docket no. 26-6 at 5).  Nevertheless, NWM asserts in its Reply that it reviewed medical records after August 23, 2018.  Reply (docket no. 36 at 7).  Viewing the evidence in the light most favorable to Dr. Hsu, reasonable minds could differ as to whether NWM's decision to deny his claim was reasonable.  Thus, whether NWM acted in bad faith or in violation of IFCA presents questions of fact that the Court cannot resolve on summary judgment.  The Court denies summary judgment as to Dr. Hsu's bad faith and IFCA claims.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) NWM's Motion for Summary Judgment, docket no. 24, is GRANTED in part and DENIED in part, as follows:

    (a) The Court GRANTS summary judgment in favor of NWM as to any claim for benefits prior to March 2018;

    (b) The Court GRANTS summary judgment in favor of NWM as to any claim for partial disability;

    (c) NWM's Motion for Summary Judgment is otherwise DENIED.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 25th day of February, 2021.

Thomas S. Zilly
United States District Judge